'23CV2314 AJB  KSC

EXHIBIT 5



**SORRENTINO & ASSOCIATES PC**

VPSorrentino@BetterCallVinnyPaul.com
(619) 356 - 0603
402 W Broadway, Ste 2600
San Diego, CA 92101
AZ, CA, NE, USPTO

July 20, 2023

**PERSONAL & CONFIDENTIAL**
**EVID. CODE § 1152**
**VIA E-MAIL**

GEICO
Attn: Legal Dept.
Attn: Samantha E. Jacobson, Esq.
Counsel II Office of the General Counsel
    CONTACT INFO

CONTACT INFO @geico.com

        Re:    **William White;** *Demand for Settlement*

Dear Ms. Jacobson:

    As you are aware, this firm represents Mr. William White, who was recently terminated by GEICO after over 20 years of employment due to an inability to perform his obligations and duties even with reasonable accommodations. However, as is clear from the facts, this was a false pretense and clearly establishes disability discrimination and age discrimination, and a failure to engage in good faith in the interactive process among other violations of law.

    The purpose of this letter is to present our client's initial demand in an attempt to resolve this matter amicably, avoiding the need for protracted litigation. Please note that this letter is for settlement purposes only and is afforded protection under California Evidence Code section 1152.

**Factual Background**

    Mr. White began his employment with GEICO on October 8, 2001 and has worked for GEICO until termination on February 3, 2023 despite offers from competitors with higher pay as proven by the number of colleagues of Mr. White's who left GEICO during his tenure. During Mr. White's 21 years of employment with GEICO, Mr. White was promoted from working in the call center to adjuster in the Bodily Injury department all the way to Performance Review for Liability as an Auditor for GEICO. These promotions provided Mr. White with a lot of information including what was required of his as an adjuster, what other positions were available within GEICO to someone with his expertise, and what was required of him as an auditor. This is important and will be discussed below due to the accommodations requested by Mr. White and denied by GEICO in the instant matter.

GEICO
RE: William White
Page 2 of 5

During his time at GEICO, Mr. White developed Trigger finger in my right middle finger, Carpal Tunnel Syndrome in both hands and debilitating arthritis in both thumbs causing a subluxation of greater than 30% in the right thumb and 20% in the left thumb.  **MEDICAL**

However, to initiate this process, Mr. White was forced to follow up with GEICO management over the course of multiple weeks. First, the GIECO nurse for workers' compensation claims in Mr. White's department was unreceptive of Mr. White's complaints and did not take them seriously. After some time, however, she was no longer in this position, Mr. White reported his complaints directly to his supervisor who passed them along to the manager after approximately four (4) follow up conversations that Mr. White was forced to initiate. Finally, the claim was reported on July 27, 2021 and the process began down the road of physicians and consultations.

On September 8, 2021, after Mr. White's first appointments, Mr. White was released to work with restrictions of 20 minutes of typing per hour of work. (Exh. A.) It is important to note that Mr. White was able to work the entire hour, but the remaining other 40 minutes needed to be non-typing tasks. GEICO was easily able to and did accommodate Mr. White and allow him to continue working proving that this accommodation was not only reasonable but available. (Exh. B.)

On October 13, 2021, after further evaluation, Mr. White was once again provided the same restriction. (Exh. C.) Again, GEICO was able to accommodate this modification and restriction and allow Mr. White to continue working further proving that GEICO found the accommodation both reasonable and available. (Exh. D.)

Subsequently, on November 8, 2021, Mr. White underwent his first surgery as recommended by the Workers' Compensation physicians. Less than one month later, on December 1, 2021, Mr. White was cleared to return to work with a restriction of 20 minutes of typing every 30 minutes with an ergonomic keyboard. (Exh. E.) At worst, this restriction was the same if not more productive/efficient for GEICO than the previously discussed restrictions, which GEICO was able to accommodate.

However, GEICO inexplicably refused to provide this accommodation and allow Mr. White to return to work. (Exh. F.)

On January 12, 2022, Mr. White's restriction was decreased to a limitation of typing for 25 minutes every 30 minutes. (Exh. G.) Despite this restriction which only required ten (10) minutes total of non-typing work every hour, GEICO again refused to allow Mr. White to return to work. (Exh. H.)

**MEDICAL**

Despite reasonable accommodations being available and previous made to Mr. White, GEICO refused to allow Mr. White to return to work throughout these periods with minimal time off required for treatment such as February 8, 2022 through February 23, 2022.

In fact, Mr. White only required time off from GEICO from November 8, 2021 through December 1, 2021, February 8, 2022 through February 23, 2022, and August 1, 2022 through December 14, 2022 for a total of 173 days over the course of a year and a half (548+ days) during which, Mr. White had approximately 40 days covered by sick time, vacation, and floating holiday pay not including FMLA leave caused by his work for GEICO over his 21-year tenure.

The accommodations requested by Mr. White were more than reasonable and GEICO had established and proven the same from September 8, 2021 through November 7, 2021 by allowing him to work with restrictions that were the same or more severe.

However, GEICO chose, instead, to call Mr. White on December 6, 2022 and let him know he had been provided with a year to recover from his GEICO-related injuries, but that he had not recovered enough to return to work to perform his tasks with or without accommodations. GEICO Human Resources ("HR") let Mr. White know that he had until January 3, 2023 to return with or without accommodations. (See Exh. N.)

As discussed above, Mr. White obtained another two physician letters again allowing him to return to work with slight restrictions after having advanced his appointments with the Workers' Compensations doctors to allow these assessments to occur. These letters, and each of them, were and had been provided to GEICO HR.

Notwithstanding the reasonableness of these restrictions and the prior accommodations provided by GEICO in 2021, GEICO unreasonably refused to provide the accommodations despite being required by law and instead terminated Mr. White's employment effective February 3, 2023 at 56 years old with his retirement age approaching. (Exh. O.) This termination forced Mr. White, while still recovering from his GEICO-related injury to look for entry level positions at other insurance carriers or wait until he was fully recovered then reapply to GEICO at the entry level.

*The Accommodations were Required by Law*

These accommodations were reasonable and required to be provided to Mr. White by law for multiple reasons, but plainly, because the accommodations would not have changed Mr. White's work in any way whatsoever. Mr. White, at the time of termination, was an auditor for liability claims known as TCR1. His duties included reviewing claims (no typing necessary), addressing corporate audits (minimal typing of approximately four (4) minutes), assessing trends of liability claims (no typing necessary), and training (no typing necessary).

Thus, which will be supported by any reasonable expert in the field of job performance and duties of an insurance adjuster or auditor, the typing required of Mr. White was approximately four (4) minutes every 30 to 60 minutes of work. This amount of work falls squarely within the restrictions imposed by the Workers' Compensation physicians necessary as a result of his GEICO-related work injuries.

Regardless, the review and assessment portions of Mr. White's duties would take up more than the five (5) minutes of rest from typing required by the physician-ordered restrictions, which notably

does not include scrolling, reading, or turning physical pages. In fact, there were no restrictions with regard to any of Mr. White's other duties.

Additionally, there is ample software that allows dictation to be performed rather than typing that is as fast or faster and actually comes with the Microsoft Word software and is on each and every smart phone sold in this country.

**Damages**

Under the agreement that Mr. White had with GEICO, much of which is not offered any longer including to entry level positions that Mr. White to which would be forced to reapply, Mr. White was provided with an hourly rate of $33.36 per hour, 6% contribution to Mr. White's 401K by GEICO, health insurance largely paid for by GEICO, vacation and floating holidays, retirement payout and other benefits. Mr. White's salary without overtime comes to approximately $69,388.80.

Given Mr. White's limited employment prospects due to age, injury, ability to find work with similar duties and similar pay, and retirement with GEICO set for 65 years old, Mr. White has suffered economic damages in the amount of $800,000 which is calculated based upon the above mentioned benefits, the difference is payout for retirement from age 56 to 65, increased cost of health insurance by over $1200 per month, and does not include cost of living adjustments, merit based raises.

GEICO's actions here easily establish a prima facie case for both age and disability discrimination, especially given GEICO's refusal to offer the same retirement and benefits package to new hires. This supports a desire to eliminate the employees who still hold this package which costs the company significantly more than the younger, new employees.

Mr. White has suffered emotional distress, been distraught, stressed, worried, anxious, and panic-stricken since the termination after working for GEICO for 21 years and suddenly having no income or prospects while injured. Moreover, early retirement is heavily linked to mental and emotional damages as well as a declination in health, which GEICO has forced on Mr. White. These damages will support the below demand especially when attorneys' fees and punitive damages are considered.

**Conclusion**

In the interest of expediency and to avoid protracted litigation, our client has authorized us to settle this claim in exchange for a full and complete general release at $1,500,000.

Please review this package and provide a response via email by **August 18, 2023**. Should we not receive a response by this date, this demand will expire, and we will proceed accordingly.

GEICO
RE: William White
Page 5 of 5

**<u>Litigation Hold:</u>**

We remind GEICO of its obligation to retain, protect, and prevent the destruction of any and all evidence related to these claims, including electronic communications. Furthermore, you are required to notify all employees of this obligation to ensure the preservation of all evidence. Failure to comply may result in spoliation of evidence, leading to a negative inference against your company.

Thank you for your time and attention to this matter. We look forward to your response.

Very truly yours,

Vincent P. Sorrentino